UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
**CINDY MOONSAMMY** and **KEMRAJ MOONSAMMY**
as Parents and Natural Guardians of **A.M.,** and **CINDY MOONSAMMY** and **KEMRAJ MOONSAMMY**
Individually,

                           Plaintiffs,

-against-

**DAVID C. BANKS,** in his official capacity as
Chancellor of the New York City Department
of Education, and the **NEW YORK CITY
DEPARTMENT OF EDUCATION**,

                           Defendants.
------------------------------------------------------------------------X

Civ. No. 24-cv-05151

**FIRST AMENDED COMPLAINT**

PLAINTIFFS CINDY MOONSAMMY and KEMRAJ MOONSAMMY, as Parents and Natural Guardians of A.M., and Individually, as and for their first amended Complaint, allege as follows:

### PRELIMINARY STATEMENT

1. The Individuals with Disabilities Education Act ("IDEA") offers federal funds to States in exchange for a commitment to furnish a "free appropriate public education" ("FAPE") to all children with certain physical or intellectual disabilities. *See* 20 U.S.C. §§ 1400; 1401(3)(A) (listing covered disabilities).

2. As defined in the Act, a FAPE comprises special education and related services tailored to meet a child's unique needs, and supportive services sufficient to allow the child to benefit from the instruction.

1

3. An eligible child acquires a substantive right to such an education once the state in which the child resides accepts the IDEA's financial assistance.

4. Under the IDEA, an Individualized Education Program ("IEP") is the primary vehicle for providing a child with the promised FAPE.

5. An IEP is a unique educational program specially designed to meet the particular needs of a child with disabilities, which is created only after carefully considering the child's current levels of achievement, disability, and potential for growth. 20 U.S.C. §§ 1414(d)(1)(A)(i)(I)-(IV), (d)(3)(A)(i)-(iv).

6. A school district's IEP must be specially designed to meet the unique needs of a child with disabilities.

7. To meet its substantive obligation under the IDEA, a school district must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances.

8. A school district fulfills its substantive obligations under the IDEA when it provides an IEP reasonably calculated to enable a child to make some educational progress and advancement from year to year—progress that is appropriate in light of the child's circumstances and is something more than mere trivial advancement.

9. Student-Plaintiff A.M. suffers from a brain injury that adversely affects her educational abilities and performance.

10. On July 2, 2024, the Plaintiffs filed a Due Process Complaint ("DPC") against the New York City Department of Education ("DOE"), alleging, among other things, that the DOE did not offer their respective child a FAPE for the 2024–2025 extended school year as discussed below.

11. As part of their DPC, the Plaintiffs requested an order requiring the DOE to fund their respective child's educational program/placement during the pendency of the due process proceedings relative to the DPC for the 2024–2025 school year, as required by 20 U.S.C. § 1415(j).

12. Unless the school district and the parent agree otherwise, federal and state law requires the child to remain in their then-current educational placement during the pendency of a due process proceeding. *See* 20 U.S.C. § 1415(j); 34 C.F.R. § 300.518(a); N.Y. Educ. Law § 4404(a).

13. The phrase "then-current educational placement" has been found to mean either (1) the placement described in the student's most recently implemented IEP; (2) the operative placement functioning at the time the due process proceeding was commenced; or (3) the placement at the time of the previously implemented IEP.

14. In most cases, the term then-current educational placement in the stay-put provision typically refers to a child's last agreed-upon educational program before the parent requests a due process hearing to challenge the child's IEP.

15. A student's last agreed-upon placement, or final unappealed administrative decision about placement, establishes a student's pendency placement.[1]

16. Pendency provides stability and consistency in the education of students with a disability, and prevents schools from unilaterally making decisions that would otherwise exclude disabled students from school, as was the practice before the enactment of the IDEA.

---

[1] *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359 (1985).

17. The Plaintiffs bring this action on their behalf and on behalf of A.M. for a pendency order finding that the International Academy of the Brain ("iBRAIN") is the Student's pendency placement for the 2024–2025 school year ("SY").

18. A.M. has a final administrative order establishing iBRAIN and her related services, including transportation and/or nursing, as their pendency program/placement for the 2024–2025 SY.

19. Plaintiffs request an order, based on SRO Krolak's Decision No. 24-237 as described below, declaring iBRAIN as A.M.'s pendency program/placement during the administrative and/or judicial proceedings relative to their DPC for the 2024–2025 extended school year.

20. Plaintiffs request an order, based on SRO Krolak's Decision No. 24-237 as described below, requiring the DOE to fund A.M.'s program/placement at iBRAIN throughout the administrative and/or judicial proceedings relative to their DPC for the 2024–2025 extended school year as pendency.

21. Since pendency has the effect of an automatic injunction, Plaintiffs need not meet the traditional requirements for injunctive relief, such as the likelihood of success on the merits, irreparable harm, or a balancing of the hardships to obtain a pendency order.

22. If Plaintiffs are required to meet the traditional requirements for injunctive relief, they can show they meet such requirements.

## JURISDICTION AND VENUE

23. This case arises under a federal statute, the IDEA, and the regulations of the United States Department of Education, which were promulgated under authority granted by statute. 20 U.S.C. § 1400 *et seq.*; 34 C.F.R. Part 300.

24. The Court has subject-matter jurisdiction of this matter under 28 U.S.C. § 1331, in that claims arise under federal law, IDEA, 28 U.S.C. § 1343(a), and laws providing for the protection of civil rights under 42 U.S.C. § 1983.

25. As much as this case involves questions about special education rights under New York State Law, the Court has supplemental jurisdiction under 28 U.S.C. § 1367.

26. The Court may grant Declaratory Judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201 and 2202, implemented through Fed. R. Civ. P. 57.

27. Under 28 U.S.C. § 1391(b), venue is proper in the Southern District of New York, in that Defendants DAVID C. BANKS, in his official capacity as Chancellor of the New York City Department of Education and the NEW YORK CITY DEPARTMENT OF EDUCATION (collectively "DOE") maintain a business office in New York County.

28. Plaintiffs are entitled to costs and attorneys' fees under 42 U.S.C. § 1988(b) and 20 U.S.C. § 1415(j) if found to be prevailing parties.

## **THE PARTIES**

29. Plaintiffs are the Parents and Natural Guardians of their minor child.

30. Plaintiffs and their child lived in the City of New York at all relevant times herein.

31. At all relevant times herein, Defendant DAVID C. BANKS was and is the Chancellor of the New York City Department of Education and is being sued in his official capacity as Chancellor.

32. At all relevant times herein, Defendant NEW YORK CITY DEPARTMENT OF EDUCATION is, and was, a corporate body created by Article 52 of the New York State Education Law, CLS N.Y. Educ. Law § 2550 (McKinney) *et seq.*, that manages and controls the educational affairs of the New York City public schools and is required to do so in

compliance with state and federal laws and regulations not in conflict with their underlying statutory authority.

33. Defendant NEW YORK CITY DEPARTMENT OF EDUCATION is the Local Education Agency ("LEA"), defined in 20 U.S.C. § 1401 and 34 C.F.R. § 300.28, responsible for providing students with a disability FAPE.

34. Defendants receive federal funds for their commitment to furnish a FAPE to all children with certain physical and/or intellectual disabilities in the City of New York. 20 U.S.C. § 1401(3)(A) (listing covered disabilities).

35. DOE's principal place of business is located at 52 Chambers Street, in the County and State of New York.

36. DOE's Impartial Hearing Order Implementation Unit is located at 65 Court Street, Room 1503, Brooklyn, New York 11201.

## FACTUAL ALLEGATIONS

### CINDY and KEMRAJ MOONSAMMY, PARENTS AND NATURAL GUARDIANS OF A.M.

37. CINDY and KEMRAJ MOONSAMMY are the Parents and Natural Guardians of A.M.

38. A.M. is a minor child.

39. A.M. is a seven-year-old student with a disability as defined by 20 U.S.C. § 1401(3).

40. Plaintiffs CINDY and KEMRAJ MOONSAMMY and A.M., lived in the City of New York at all relevant times herein.

41. A.M. is entitled to receive a FAPE and related services from DOE.

42. Since A.M. is a student with a disability, the DOE must provide her with a FAPE under IDEA and New York Education Law.

43. DOE must provide A.M. with an IEP every year.

6

## 2023-2024 School Year—IHO Case No. 266488

44. For the 2023-2024 SY, Plaintiffs CINDY and KEMRAJ MOONSAMMY filed a DPC, asserting, *inter alia*, that the DOE failed to provide A.M. with a FAPE.

45. On May 2, 2024, IHO Patricia Le Goff issued an FOFD in IHO Case No. 266488, finding that the DOE failed to provide A.M. with a FAPE for the 2023-2024 SY and that iBRAIN was an appropriate unilateral placement.

46. IHO Le Goff found that Plaintiffs were also entitled to transportation and 1:1 nursing services.

47. However, IHO Le Goff found that with regard to payment for transportation and nursing services, equitable considerations did not fully favor the parents.

48. Accordingly, IHO Le Goff reduced DOE's obligation to fund A.M.'s transportation to 50% and reduced DOE's obligation to fund A.M.'s nursing services to 0%.

49. Plaintiffs CINDY and KEMRAJ MOONSAMMY appealed IHO Le Goff's FOFD to the Office of State Review, contending, *inter alia*, that IHO Le Goff erred in reducing reimbursement for transportation and nursing services.

50. The DOE cross-appealed IHO Le Goff's FOFD to the Office of State Review, contending that, *inter alia*, they were entitled to a reduction in their obligation to fund the base tuition at iBRAIN.

51. Neither party appealed IHO Le Goff's finding that the DOE had failed to offer A.M. a FAPE for the 2023-2024 SY or that iBRAIN was an appropriate unilateral placement for A.M.

52. The appeal was assigned to SRO Krolak and assigned Appeal No. 24-237.

53. On August 15, 2024, SRO Krolak issued his opinion. That opinion is attached hereto as "Exhibit 1".

54. SRO Krolak noted that because neither party appealed IHO Le Goff's finding that the DOE had failed to provide A.M. with a FAPE for the 2023-2024 SY and that iBRAIN was an appropriate unilateral placement, those findings were final and binding. Exhibit 1, pg. 10.

55. In addition, SRO Krolak rejected the DOE's contention that they were entitled to a reduction in the amount of iBRAIN tuition that they were required to fund. *Id.*

56. In sum, SRO Krolak affirmed IHO Le Goff's FOFD regarding DOE's obligation to fully fund A.M.'s placement at iBRAIN for the 2023-2024 SY. *Id.*, pg. 19.

### *Moonsammy v. Banks et al.*, 24-cv-06483 (PAE)

57. On August 27, 2024, Plaintiffs appealed SRO Decision No. 24-237 to the United States District Court in the Southern District of New York. That action was assigned docket no. 24-cv-6483 and assigned to Judge Paul A. Engelmayer.

58. Plaintiffs sought review of SRO Krolak's affirmance of IHO Le Goff's determination that the equitable considerations warranted a reduction in funding of A.M.'s transportation nursing services. *See* 24-cv-6483.

59. DOE has not appealed SRO Krolak's Decision No. 24-237.

60. Plaintiffs *did not* seek a review of SRO Krolak's affirmance of IHO Le Goff's determination that the DOE failed to provide A.M. with a FAPE, that iBRAIN was an appropriate unilateral placement, and that the DOE was to fully fund A.M.'s tuition at iBRAIN for the 2023-2024 SY.

61. Accordingly, SRO Decision No. 24–237 is the final administrative order establishing A.M.'s pendency program/placement during the administrative and judicial proceedings relative to A.M.'s DPC for the 2023–2024 SY.

### **2024–2025 School Year**

62. On June 17, 2024, Plaintiffs CINDY and KEMRAJ MOONSAMMY sent a Ten-Day Notice to the DOE rejecting its proposed IEP for A.M. for the 2024–2025 SY as inappropriate to meet her needs and requesting the DOE continue funding of A.M.'s placement pursuant to SRO Krolak's Decision.

63. On July 2, 2024, Plaintiffs CINDY and KEMRAJ MOONSAMMY filed a DPC seeking continued funding for A.M.'s placement and related services at iBRAIN, including special transportation services for the 2024–2025 SY.

64. Plaintiffs' DPC was assigned case number 277268 and assigned to IHO Sabrina Styza.

65. As part of their DPC, Plaintiffs CINDY and KEMRAJ MOONSAMMY requested an order requiring the DOE to fund A.M.'s educational program/placement during the pendency of due process proceedings relative to the DPC for the 2024–2025 school year, as required by 20 U.S.C. § 1415(j).

66. SRO Decision No. 24-237 is the final administrative order establishing A.M.'s pendency program/placement during the administrative and judicial proceedings relative to A.M.'s DPC for the 2023–2024 SY.

67. On October 2, 2024, IHO Styza issued an order on pendency for Student-Plaintiff A.M. A copy of that pendency order is attached hereto as "Exhibit 2".

68. IHO Styza erroneously declined to rely on SRO Decision No. 24-237 as the basis for A.M.'s pendency placement for the 24-25 SY.

69. Instead, IHO Styza erroneously based A.M.'s pendency placement a June 3, 2024 order from United States District Judge Engelmeyer in *Moonsammy v. Banks*, 24-cv-2616.

**AS AND FOR A FIRST CAUSE OF ACTION**

70. Plaintiffs repeat, reallege, and reaffirm each allegation set forth above as if set forth more fully herein.

71. An action that alleges a violation of the IDEA's pendency provision falls under one exception to IDEA's requirement for the exhaustion of administrative remedies before filing suit in federal court.

72. Pendency provides stability and consistency in the education of students with a disability and prevents schools from unilaterally making decisions that would otherwise exclude disabled students from school, as was the practice before the enactment of the IDEA.

73. A student's last agreed-upon placement—a final administrative order—establishes a student's current educational placement for pendency.

74. Defendants have denied Plaintiffs' right to a FAPE under IDEA.

75. Defendants have denied the Plaintiffs' right to their stay-put placement.

76. Defendants have violated the IDEA by implementing broad and indiscriminate policies, practices, and procedures, as well as policies, practices, and procedures contrary to the Act.

77. Defendants have violated Plaintiffs' procedural and due-process rights under the IDEA.

78. Defendants violated Plaintiffs' rights under 42 U.S.C. § 1983 by failing to have adequate policies, procedures, protocols, and training to ensure that the long-standing provisions of the IDEA and New York State special education laws are being implemented.

79. Defendants have violated the rights of Plaintiffs under N.Y. Educ. Law § 3202, 3203, 4401, 4404, and 4410 and § 200 (McKinney) of the Regulations of the New York State Commissioner of Education, 8 N.Y. COMP. CODES R. REGS. § 200.

80. A.M. currently attends iBRAIN and has a final administrative order establishing iBRAIN as their pendency placement for the 2023-2024 school year through SRO Krolak's Decision. See Exhibit 1.

81. By requesting a pendency order declaring iBRAIN to be Student-Plaintiff's pendency placement for the 2024–2025 SY, Plaintiffs are asking the Court to order the DOE to fulfill its obligations under federal and state law—to maintain the student's status-quo educational placement during the due process proceedings relative to student's relevant due process proceedings.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiffs respectfully request that the Court:

1. Enter a Judgment, under the Declaratory Judgment Act, finding that A.M. is entitled to an order declaring her pendency program/placement, based on SRO Krolak's Decision No. 24-237, to be at iBRAIN throughout the administrative and judicial proceedings relative to her DPC for the 2024–2025 school year, which includes funding tuition at iBRAIN, and all related services, including transportation, and nursing where appropriate, during the 2024–2025 school year;

2. Order the DOE to implement A.M.'s pendency funding in the ordinary course of business within a reasonable timeframe to ensure that there is no disruption in the provision of A.M.'s services. Plaintiffs request the Court direct the Defendants to ensure the ordinary or normal course regarding pendency and pendency funding commences no later than 90 days from the date of the Court's order, with regular updates to ensure A.M.'s current educational placement is not jeopardized.

Dated:   October 24, 2024
         New York, New York

                                        Respectfully submitted,

                                        ___/S/_____
                                        Daniela Jampel
                                        Liberty & Freedom Legal Group
                                        *Attorneys for Plaintiffs*
                                        300 East 95th Street, Suite 130
                                        New York, New York 10128
                                        (646) 850-5035